# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x
:
: Civil Action No.
:
Taha KHELALFA, Individually and :
on behalf of all other persons similarly : **JURY TRIAL DEMANDED**
situated :
:
:
                Plaintiffs, :
:
  v. :
:
:
:
:
GENERAL ELECTRIC COMPANY :
:
:
                Defendant. :
------------------------------------------------------x

## **COMPLAINT**

                /s/ Philippe Jean Joseph Pradal
                Philippe Jean Joseph Pradal
                Pradal & Associates, PLLC
                112 West 34th, 18th Floor
                New York, NY 10120
                T. (212) 502-6773
                M. (917) 750-3106
                philippe.pradal@pradallaw.com

                *Attorney for Plaintiffs*

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... - 1 -

PARTIES .......................................................................................................................... - 1 -

SUBJECT MATTER JURISDICTION AND VENUE ................................................... - 2 -

PERSONAL JURISDICTION ......................................................................................... - 2 -

CLASS ACTION ALLEGATIONS ................................................................................ - 2 -

FACTUAL BASIS FOR CLAIMS .................................................................................. - 5 -

CLAIMS FOR RELEIF ................................................................................................... - 8 -

FIRST CLAIM BREACH OF CONTRACT .................................................................. - 8 -

SECOND CLAIM PROMISSORY ESTOPPEL ............................................................ - 9 -

PRAYER FOR RELEIF ................................................................................................... - 9 -

ON THE FIRST AND SECOND CLAIM FOR RELEIF .............................................. - 9 -

Plaintiff Taha KHELALFA ("Khelalfa"), by their attorneys Pradal & Associates, PLLC, as for his Complaint against defendant, alleges the following based on his personal knowledge as to himself and his own acts, and information and belief as to all other matters. Plaintiff has substantial evidentiary support for the allegations set forth herein:

## INTRODUCTION

1. In order to secure a very important and strategic acquisition in France, Defendant GE entered into contracts, made representations made promises that it would keep know-how and employment in France. GE even went as far as promising to increase the acquired businesses' number of employees in France.
2. In order to give these assurances to Plaintiff, Defendant went on French national television, spoke to the French President, entered into contracts, to make sure that its projected game changing acquisition be secured.
3. However, it now appears now that these commitments were taken lightly by GE as it is engaged in a massive downsizing redundancy plan to secure that a least 1,000 French GE employees be terminated.
4. Plaintiffs now seek to prevent this redundancy plan in France, as it would be catastrophic for employments and strategy in France.

## PARTIES

### Plaintiff

5. Taha Khelalfa, the named Class Action Plaintiff, is an employee of GRID SOLUTIONS. Khelalfa and the class he seeks to represent has an employment agreement with GRID SOLUTIONS that is about to be terminated as a result of Defendants' breach of contract. Khelalfa is a French national and reside at 2 bis Avenue d'Oschatz, Venissieux, France.

### Defendant

6. The GENERAL ELECTRIC COMPANY ("GE") is a New York corporation with its principal place of business at 41 Farnsworth Street, Boston, Massachusetts, 02210. GE is engaged in various businesses, including business appliances, consumer appliances, aviation, consumer

electronics, power, power project consulting services, energy management, healthcare, home, housewares, industrial solutions, intelligent platforms, and lighting. GE presents itself as driving the world forward by tackling its biggest challenges, bringing real progress and possibility to every corner of the planet —safely delivering people where they need to go; powering homes, schools, hospitals, and businesses; and offering more precise diagnostics and care when patients need it most.

## SUBJECT MATTER JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over Plaintiffs' claims under 28 U.S.C. §§ 1331 and 1332, and under 18 U.S.C. § 1964(c). Plaintiffs' first claim for relief arises under 18 U.S.C. § 1961 et seq., as hereinafter more fully appears. There is also complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs. Plaintiffs' state law claims arise out of the same case or controversy as its federal law claims, as all claims in this action arise out of a common nucleus of operative facts. Thus, this Court also has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367.

## PERSONAL JURISDICTION

8. Exercise of jurisdiction over GE is reasonable and proper in this District because GE regularly transacts business, owns property, and is qualified to do business within the State of New York, and within the Southern District of New York.

9. Upon information and belief GE also entered into several agreements subject to New York law and the jurisdiction of the U.S. District Court for the Southern District of New York and giving rise to Plaintiffs' claims asserted herein.

## CLASS ACTION ALLEGATIONS

10. Plaintiff Khelalfa brings this action as a class action pursuant to FRCP 23(a) and (b). The class so represented by Plaintiff Khelalfa in this action is defined as follows: "All the employees of GENERAL ELECTRIC's wholly owned subsidiaries in France who are about to lose their

employment within the next 3 months of filing this complaint in furtherance of GE's redundancy plan" (the "**Class**").

11. This action is properly maintainable as a class action.

12. The members of the Class are identifiable; that is, they are capable of being identified. The identification of Class Members is administratively feasible. The definition of the Class is sufficiently precise that the Court can readily determine, from records maintained by GE and/or the Class Member, whether a particular individual is a member of the Class. Therefore, the Class asserted in this action satisfies the "identifiability" criterion for class certification under FRCP 23.

13. The proposed Class Representative, Mister Taha Khelalfa is an employee of GENERAL ELECTRIC's wholly owned subsidiary named GRID SOLUTIONS who is employed at the Villeurbanne Site on the date hereof and is about to lose his employment within the next 3 months. Therefore, the Class asserted in this action satisfies the "membership" criterion for class certification under FRCP 23.

14. The members of the Class are in excess of 300 members. The class is therefore so numerous that joinder of individual members herein is impracticable. Therefore, the Class asserted in this action satisfies the "numerosity" criterion for class certification under FRCP 23(a)(1).

15. There are questions of law and questions of fact that are common to members of the Class, including, but not being limited to, the following:
    - Whether Defendant breached its contractual obligation to increase the number of job positions offered in France by at least 1.000 new jobs;
    - Whether Defendant breached its contractual obligation not to reduce the number of employees it employs in France directly or indirectly;
    - Whether the Class Action Plaintiffs are the third-party beneficiary to Defendant's contractual obligations.

16. Therefore, the Class asserted in this action satisfies the "commonality" criterion for class certification under FRCP 23(a)(2).

17. Plaintiff Khelalfa's claims are typical of the claims of the other members of the Class as all members of the Class are similarly affected by Defendants' wrongful acts. Indeed, Plaintiff Khelalfa's claims against Defendants, as asserted in this Complaint, arise out of the same uniform course of conduct, and are based on the same legal theories, as are the claims of

every other Class Member. Therefore, the Class asserted in this action satisfies the "typicality" criterion for class certification under FRCP 23(a)(3).

18. Plaintiff Khelalfa will fairly and adequately protect the interests of the Class. Plaintiff Khelalfa's interests are not antagonistic to, but rather are in unison with, the interests of the other members of the Class. Plaintiff Khelalfa is committed to prosecuting this action, and he has retained competent counsel experienced in class action and complex business litigation. Therefore, the Class asserted in this action satisfies the "adequacy" criterion for class certification under FRCP 23(a)(4).

19. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct for Defendant. Therefore, the Class asserted in this action satisfies the criterion for class certification under FRCP 23(b)(1)(a).

20. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole and have caused injury to the Class as a whole and, therefore, final injunctive relief on behalf of the Class as a whole is appropriate. Therefore, the Class asserted in this action satisfies the criterion for class certification of FRCP 23(b)(2).

21. The questions of law or fact that are common to the Class predominate over any questions affecting only individual members of the Class. Each Class Member was damaged in the very same way by the very same mechanism resulting in each Class Member suffering the same damage – the unlawful deprivation of their employment. The fact that the amount of each Member's damages may vary member to member in no way affects class certification, which remains proper where, as here, the injury complained of was common class wide despite the fact that each Class Member may be entitled to different damages. Therefore, the Class asserted in this action satisfies the "predominance" criterion for class certification under FRCP 23(b)(3).

22. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Requiring each Class Member to pursue her or his claim individually would entail a host of separate suits, with concomitant duplication of costs, attorneys' fees, and demands on court resources. The Class Members' individual claims are sufficiently small that Class Members would be reluctant to incur the substantial cost, expense, and risk of pursuing their claims individually. Certification of this case under Rule 23 of the Federal

Rules of Civil Procedure will enable the issues to be adjudicated for all Class Members with the efficiencies attendant to class litigation. Therefore, the Class asserted in this action satisfies the "superiority" criterion for class certification under FRCP 23(b)(3).

## FACTUAL BASIS FOR CLAIMS

23. In 2014, GE made public an offer to buy the energy businesses of Alstom, a French energy champion (the "**Transaction**"). The takeover decision came after a series of acquisitions whose primary goal was to reinforce the company's position in Europe. GE CEO Jeffrey Immelt reflected that the deal would enable GE to access more of Europe added value, especially its technological know-how. In addition, it would bring further scale to GE operations. These two dimensions would enable GE to be "the most competitive infrastructure company."

24. However, the French government was initially opposed to this acquisition as it worried that strategic know-how, numerous jobs and activities would be shipped away. In fact, the French government was strongly opposed to this acquisition. So much so that it considered acquiring Alstom itself before discarding that option.

25. On April 28, 2014 M. Jeffrey Immelt, CEO of GE travelled to Paris to meet with the French President M. François Hollande. During that meeting, the French President asked Jeffrey Immelt to guarantee that French jobs, and Alstom's know how remained in France post-acquisition. On April 29, 2014, Jeffrey Immelt wrote to the French President to reassure him that GE would indeed maintain Alstom's jobs and knowhow. In the words of Jeffrey Immelt:

> "We are committed to increasing the number of our jobs in France, particularly highly skilled jobs in engineering and production located in the region.
> We are committed to establishing the global headquarters of the Grid (networks) activities in France. Hydro, Offshore Wind Turbines and Steam Turbines.

> We are committed to developing the Belfort site, where some of our global operations are already located, as the European headquarters for GE's Thermal Energy business.
>
> We are committed to establishing our worldwide activities in France in the wind energy sector and, of course, to honor the industrial and employment commitments already made by Alstom in Cherbourg and Saint-Nazaire.
>
> We are committed to developing our center of excellence on rotating machines in Nancy (Power Conversion).
>
> We are committed to increasing our investments in the Grenoble technology center, which specializes in R&D and hydroelectric engineering."

26. On April 30, 2014 Alstom Board of Directors approved GE offer. However. On the same day on prime-time television, Jeffrey Immelt went on national television to give reassurance about GE's commitments in France. More precisely, television news anchor David Pujadas (France 2 channel) directly asked M. Immelt: "Thousands of Alstom employees are watching us tonight, do you give them an insurance on employment in France in these Alstom's factories?". M. Immelt answered: "So I spoke with president Hollande earlier this week […] what I reassured to him is that we planned to grow the employment of the Alstom's assets in France".

27. On May 5, 2014 French President M. François Hollande asked that GE made a higher offer from, asking for a better offer regarding employment in France. On May 9, 2014 the French and German governments allied in order to find an alternative offer to GE's. The situation escalated to the point where French government adopted a decree to strengthen its control of foreign investment and send a signal that it would veto Alstom takeover by GE, if certain guarantees regarding know how and employment were not given. Eventually, the French government-initiated discussions with GE.

28. The French Government wanted the terms of GE's acquisition of Alstom to include certain commitments directly in favor of Alstom's employees, including Plaintiff, both in terms of maintaining Alstom's jobs, know how, as well as the number of jobs GE would create in France. In addition, the French government also wanted commitments from GE that it would maintain and set-up certain activities in France.

29. Discussions were fruitful and led to the signing of a memorandum of understanding between the French State, Alstom and GENERAL ELECTRIC on June 21, 2014. Upon information and belief, this memorandum provided that the French State would authorize GE's foreign investment with Alstom subject to substantive conditions be agreed upon and guaranteed by contract between the parties, particularly with respect to employment.

30. On 4 November 2014, a series of agreement are entered into between the GE, Alstom and the French government, including notably:
    - the purchase agreement to purchase Alstom's Energy businesses, namely Power (electricity generation) and Grid (the "Energy businesses"), as well as shared and central services of Alstom;
    - the entering into several agreements relating to the joint ventures in the nuclear, grid and renewables activities;
    - the entering into an agreement relating to the acquisition by Alstom of GE Signaling;
    - the entering into an agreement between Alstom, the French Government and GE, about the overall transaction; and
    - the entering into an agreement with the global alliance in the rail sector, as well as framework agreements with EDF and Areva (for new nuclear projects).

    (the "**Agreements**")

31. These Agreements included the following contractual undertaking to the benefit of Plaintiff and the class he seeks to represent namely:

    - GE undertook to keep Alstom's strategic know-how in France, maintain employment and even increase the net number of full-time equivalent jobs within GE's industrial activities (including industrial support) in France (including the activities to be acquired from Alstom as part of the Transaction and energy alliances) by one thousand (1,000). These additional jobs had to mainly concern operational positions, including engineering and manufacturing. This undertaking was to be fulfilled by the end of the third calendar year following the year of completion of the Transaction.

32. This undertaking benefited directly Plaintiff and the class he seeks to represent. Plaintiff and the class he seeks to represent relied on this commitment of GE expressed to its benefit

in the Agreements as well as on the public statements made by Jeffrey Immelt CEO of GE, to (i) remain within Alstom after it was acquired by GE and rebranded GRID SOLUTIONS and (ii) maintain his standard of living form himself and his family.

33. On 5 November 2014, the French government gave its authorization for the transaction under Article L. 151-3 of the French Monetary and Financial Code relating to foreign investments in France.
34. Alstom held an Extraordinary Shareholders' Meeting on 19 December 2014 which approved the proposed sale of Alstom's Energy businesses to General Electric.
35. Plaintiff Khelalfa and the Class members relied on the Agreements and promises made by GE and remained working at GE's fully owned subsidiary on the belief that his employment would be maintained.
36. Since then however, GE has not abided by these agreements. Worse, on May 29, 2019 GE announced that it would cut more than 1,000 jobs, mainly at its gas turbine operations in eastern France, part of a wave of European layoffs.
37. Acting on this announcement, in June 2019, GE presented to employees of GE's French subsidiaries a redundancy plan. Plaintiff is to be included within the employees that will be terminated at the Villeurbanne's Site.

## CLAIMS FOR RELEIF

## FIRST CLAIM BREACH OF CONTRACT

38. Plaintiff realleges and incorporates herein by reference each and every foregoing paragraph of this Complaint as if set forth in full.
39. Plaintiff and the Class he seeks to represent are intended third party beneficiary of the Agreements.
40. Pursuant to the Agreements Plaintiff's employment should have been maintained by Defendant.
41. By designing, planning, announcing and executing a redundancy plan that plans to terminate 1,000 employees across its French subsidiaries including Plaintiff's employment, Defendant GE has intentionally breached the commitment it entered into on November 4, 2014.

42. WHEREFORE, Plaintiff prays for judgment as set forth below.

## SECOND CLAIM PROMISSORY ESTOPPEL

43. Plaintiff realleges and incorporates herein by reference each and every foregoing paragraph of this Complaint as if set forth in full.
44. Plaintiff and the Class he seeks to represent are intended third party beneficiary of the Agreements.
45. Pursuant to the Agreement Plaintiff's employment should have been maintained by Defendant.
46. By way of having its CEO speak on national television at prime-time, Defendant expressly and directly promised to the French Alstom employees that GE would maintain their jobs after having acquired Alstom.
47. Defendant GE knew or should have known that Plaintiff and the class he seeks to represent would rely on this promise post-acquisition to execute their employment contract with GE's French subsidiary.
48. Plaintiff and the class he seeks to represent did rely on GE's promises to remain at their position and not seek jobs opportunities elsewhere.
49. Injustice can only be avoided by the enforcement of the promise because as a result of his reliance upon Defendant's promise, KHELALFA remained in GE's French subsidiary to his detriment.
50. WHEREFORE, Plaintiff prays for judgment as set forth below.

## PRAYER FOR RELEIF

## ON THE FIRST AND SECOND CLAIM FOR RELEIF

51. For equitable relief by issuing an injunction that Defendant not proceed with its redundancy plan;
52. For general damages in an amount to be determined at trial but believed to be greater than 5 million euros
53. For punitive damages in an amount to be determined at trial; and

54. For Plaintiff's reasonable attorneys' fees and costs according to statute.
55. For such other legal and equitable relief as the Court may deem the Plaintiffs are entitled to receive

Date: November 19, 2019

/s/ Philippe Jean Joseph Pradal
Philippe Jean Joseph Pradal
Pradal & Associates, PLLC
112 West 34th, 18th Floor
New York, NY 10120
T. (212) 502-6773
M. (917) 750-3106
philippe.pradal@pradallaw.com

*Attorney for Plaintiff*
